UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-00352-01, 03 |
| | : | |
| v. | : | |
| | : | Judge John D. Bates |
| FRANCISCO ALBERT MARTE | : | |
| CESAR ISABEL, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OMNIBUS MOTION IN OPPOSITION TO DEFENDANT ISABEL'S
AND MARTE'S MOTION TO DISMISS THE INDICTMENT**[1]

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully requests the Court to deny the defendants' motion to dismiss the indictment. The government asserts the following in support of its request:

**I.   Procedural History**

November 20, 2007, the defendants were arrested and charged by federal criminal complaint with Unlawful Possession with Intent to Distribute 500 grams or more of Cocaine. On November 21, 2007, the defendants were presented to the magistrate court for an initial

---

[1] On 2/11/08, the court issued an order directing the government to file an affidavit confirming when the indictment was filed as to Defendant Isabel Cesar. Defendant Marte, on 2/11/08, filed a motion to join defendant Cesar's motion to dismiss. While the court has not ruled on that motion as of the preparation of this pleading, the government files this pleading in response to each motion to dismiss and respectfully requests that the court accept this pleading as complying with its order dated 2/11/08. Upon receiving the order, AUSA Angela S. George began assisting AUSA Rhonda Campbell, government attorney of record, with this particular issue. The factual assertion in the Indictment Processing of Probable Cause Arrest Cases Section of this pleading were derived from various interviews of staff in the U.S. District Court Clerk's office as well as from her experience in processing indictments and handling cases as the Magistrate Court AUSA from late 2005 until the present. As an officer of the court and duly licensed attorney of the District of Columbia Bar, she swears that the information in that respective section is true and accurate to the best of her knowledge and requests that the court accept it as an affidavit. However, if the court prefers AUSA George to submit a sworn affidavit in the usual form as a supplement to this motion, she is more than willing to do so.

appearance on the above charge. On that date, the government requested pre-trial detention for both defendants pursuant 18 U.S.C. § 3142(f)(1)(c). The court granted the request, held the defendants without bond and scheduled a consolidated preliminary and detention hearing for November 27, 2007 at 1:45 p.m. On November 27, 2007, the magistrate court conducted a consolidated preliminary and detention hearing. Metropolitan Police Department Detective King Watts testified, and the court found probable cause based upon his testimony. The court concluded that the defendants were a danger to the community and held them without bond, binding the case over for grand jury action.

From November 27, 2007 until December 20, 2007, the government investigated the case, and on December 20, 2007, the foreperson of Grand Jury 07-2 presented its indictment and related documents in this case in open court and in the presence of presiding Assistant United States Attorney ("AUSA") Angela S. George.[2] The court accepted the documents and approved the return of the indictment. Thereafter, the documents were given to the courtroom deputy, and she submitted them to the magistrate intake clerk's office where they were stamped "Filed in Open Court, December 20, 2007." On January 22, 2008, the defendants were arraigned, and they pled not guilty. The court briefly heard representations regarding the motion to dismiss the indictment, and it set a motions schedule.

On February 12, 2008, the court conducted a status hearing. AUSA Angela S. George, along with AUSA Rhonda Campbell, appeared on behalf of the government and orally requested a Federal Rule of Criminal Procedure 6(e) waiver to obtain a copy of the grand jury poll sheet

---

[2] As a matter of course, the courtroom deputies for the magistrate court judges record the grand jury number and the name of the presiding AUSA for each grand jury return on their copy of the daily calendar. See Attachment 1, page 1.

(See Attachment 2) in this case to assist the government in responding to the court's order which directed it to file an affidavit in reference to the motion to dismiss the indictment. The court granted the government's request. In a brief discussion about the contested issue, the court stated that in analyzing the defendant's claim, it was not concerned about when the indictment was "returned" or "entered." Specifically, the court stated that it was concerned about when the indictment was "filed" because 18 U.S.C. § 3161(b) uses the term, "filed," in establishing the time period in which an indictment must be submitted to satisfy the 30-day indictment rule. Even though the court noted that there may be a distinction between the terms "return" and "filed," it acknowledged that these two terms may refer to the same event.

## II.     Indictment Processing in Probable Cause Arrest Cases

Before the government addresses the contested issue, it believes that it is necessary to outline the process by which an indictment is conjunctively processed by the U.S. Attorney's Office for the District of Columbia ("USAO") and the United States District Court for the District of Columbia.

### A.     Generally

After a case has been investigated, the grand jury AUSA, along with the USAO paralegal staff prepare an indictment[3], a poll sheet[4], and an indictment list ("indictment documents").[5]

---

[3] See Attachment 3. At this stage, the indictment does not have the clerk's office stamp or the foreperson's signature on it.

[4] See Attachment 2. At this stage, the poll sheet does not have the handwritten numerical vote or the foreperson's signature on it. This information is added by the grand jury foreperson after the indictment and the related documents have been presented to the grand jury for a vote.

[5] This document list the defendants' names, respective criminal charges and federal code sections.

3

These documents are presented to the grand jury once the USAO has requested a vote regarding certain criminal charges. If the grand jury votes to indict the respective defendants, then the numerical vote is written on the poll sheet, and the grand jury foreperson or deputy foreperson signs the indictment and poll sheet. Thereafter, the foreperson reports to the respective magistrate judge's courtroom to participate in the grand jury return which is mandated by Federal Rule of Criminal Procedure 6(f) ("Rule 6(f)"). Fed.R.Crim.P. 6(f). The foreperson provides the indictment documents to the courtroom deputy. The courtroom deputy calls the grand jury return in open court. Then, the grand jury foreperson or deputy foreperson, along with a presiding AUSA, approaches the court and is present while the court reviews and accepts the indictment documents in open court. To memorialize the event, the courtroom deputies record the time of the grand jury return, name of the presiding prosecutor, and the grand jury number on their daily calendar. *See* Attachment 1, page 1. After the return, routinely, the indictment documents are given to the magistrate intake clerk in the clerk's office on the same day the return occurred.[6] Upon receipt of the indictment documents, the magistrate intake clerk, within twenty-four hours, stamps the indictment documents with the "filed in open court" stamp[7] and assigns a criminal case number and a United States District Court ("USDC") Judge. Once the magistrate intake

---

[6]Usually, the courtroom deputies call the magistrate intake clerk to inform her that the magistrate court conducted a return and the documents are ready to be processed. Often, the magistrate intake clerk will report to the magistrate judge's courtroom to retrieve the documents to begin processing the indictment documents.

[7]Based upon an interview with Anjanie Sewsankor, Magistrate Intake Clerk, the government learned that the "filed in open court" stamp is placed on the indictment documents after the clerk receives the indictment documents. Then, she reviews the poll sheet to determine when the indictment was returned in open court. The poll sheet states that the respective indictment was returned in open court on a specific date.

clerk has completed these tasks, s/he submits the indictment documents to the docketing section of the clerk's office. A staff person in this section opens the case in the electronic case filing system ("ECF"), creates a docket entry for the event, and scans the indictment into ECF.[8] The poll sheet is given to the jury office where it is filed and stored. The clerk's office does not make or keep copies of the poll sheet. Usually, within ten business days of the case being assigned to a USDC judge, the court schedules an arraignment date.

> B.      In this Case

Before or on December 20, 2007, the USAO prepared the indictment documents and requested a vote from Grand Jury 07-2. Grand Jury 07-2 voted to indict the defendants. *See* Attachment 2. The foreperson reported to courtroom 6 where Magistrate Judge Facciola was sitting and submitted the documents to the court in open court at 2:03 p.m. *See* Attachment 1, page 1. By 2:06 p.m., the court had accepted, reviewed, and approved the indictment documents. The court gave the documents to the courtroom deputy who ensured they were given to the magistrate intake clerk. The magistrate intake clerk received the indictment documents and affixed the "filed in open court" stamp on them. The indictment in this case was filed on December 20, 2007.[9] ECF indicates that the docketing section recorded this event in the

---

[8] While the docketing section completes this process in a timely manner, there is no established time period in which docketing must occur. Generally, it can occur as quickly as within one business day, or it could take three business days as it did in this case.

[9] In preparing to file the government's written response, AUSA Angela S. George interviewed Anjanie Sewsankor, the Magistrate Intake Clerk who processes indictments in the clerk's office. After being shown a copy of the indictment in this case, she stated that the indictment was received on the day it was returned in court. Specifically, she made this conclusion because the "filed in open court" stamp had the same date as the return date on the poll sheet, and the indictment only possessed a "file in open court" stamp. She said that if, for example, the indictment documents were submitted to the clerk's office near the close of

electronic docket on December 27, 2007.

### III. Legal Discussion and Argument

#### A. Plain Language Interpretation of 18 U.S.C. § 3161(b) and Federal Rule of Criminal Procedure 6(f).

Now, Defendants Isabel and Marte claim that the government violated the Speedy Trial Act ("STA") because the indictment was not returned within 30 days, by December 20, 2007, citing 18 U.S.C. § 3161(b) ("30-day indictment rule"). Specifically, they, in essence, are claiming that the "filed in open court" stamp erroneously reflects the date of the indictment return because the docket entry was not placed on ECF until December 27, 2007. As ordered by the court, the government will address the issue of when the indictment was filed in the context of the 30-day indictment rule.

The indictment in this case was filed pursuant to 18 U.S.C. 3161(b) when it was returned to the magistrate judge in open court as required by Rule 6(f). Fed.R.Crim.P. 6(f). To determine whether an indictment is filed within the 30-day time period as required by 18 U.S.C. § 3161(b), the court must analyze the language of Rule 6(f) in conjunction with the language of 18 U.S.C. § 3161(b).

Indictments are uniquely different from any other document or pleading in a criminal case because they are generated by the grand jury, a non-party, and because Congress delineated a

---

business and the magistrate intake clerk was not available to immediately process the documents, a clerk's office staff member, as a routine matter, would stamp the back of the indictment with a "received" stamp. Then, within twenty-fours hours, on the next day, she would check and see if any indictment documents were submitted. If any documents were, she would review the date on the poll sheet and the date on the back of the indictment. Then, she would affix the "filed in open court" stamp with the appropriate date on the indictment documents and transfer them to the docketing section.

specific approval process by enacting Rule 6(f) which determines when an indictment has legal vitality and becomes part of the record in a criminal case. Therefore, it is necessary to determine when an indictment has been returned to assess whether the 30-day indictment rule was violated. This is necessary because Rule 6(f) mandates the event, the return, that triggers the running of the 30-day time period in the context of 18 U.S.C. § 3161(b). If an indictment is never returned pursuant to Rule 6(f), then the 30-day time period is not triggered because the indictment is not a legally viable document and has not become part of the criminal case.

Rule 6(f), Indictment and Return, states "...[t]he grand jury-or its foreperson or its deputy foreperson-must **return** the indictment to a magistrate judge in open court." Fed.R.Crim.P. 6(f). 18 U.S.C. § 3161(b) states "[a]ny.....indictment charging an individual with the commission of an offense shall be **filed** within thirty days from the date on which such individual was arrested...." The defendants claim that the indictment must be **entered** within 30 days.[10] 18 U.S.C. § 3161(b).

---

[10] The term "enter" as a triggering event with respect to determining time periods has legal meaning in the civil practice before this Court. In federal civil practice, certain time periods are calculated from the date of entries on the civil docket. There is no corresponding criminal rule with respect to indictments. For example, Federal Rule of Civil Procedure 58(b)(2) says that a judgement is entered when it is entered on the civil docket under Federal Rule of Civil Procedure 79(a). Fed.R.Civ.P. 58(b)(2). Federal Rule of Civil Procedure 59(e) says that a motion to alter or amend must be filed no later than 10 days after the entry of judgment. Fed.R.Civ.P. 59(e). Federal Rule of Appellate Procedure 4 says that the notice of appeal must be filed within a specified time period after judgement is entered. Fed.R.App.P. 4. In contrast, the relevant authority with respect to the "return" or "filing" of indictments has no provision with respect to entry of any action on the docket While there is no equivalent circumstance with respect to entries on the criminal docket, Federal Rule of Civil Procedure 5 uses the term "filed" in a similar way as it is used by the federal courts in the criminal context. Federal Rule of Civil Procedure 5(e) says that a paper is filed, other than by electronic means, by delivering it to the clerk, or *to a judge who agrees to accept it for filing and who must then note the filing date on the paper and deliver it promptly to the clerk*. Fed.R.Civ.P. 5(e). This scenario is analogous to the indictment return process in which the foreperson files the indictment documents with the magistrate judge in open court. After the magistrate judge agrees that the indictment documents have been properly submitted, they are given to the magistrate intake clerk. The clerk, on the

First, the definition section of the "STA" does not define the term "filed". It only defines the terms, "judge" and "offense." 18 U.S.C. § 3172 (2007). The government was not able to find a definition of these terms in federal jurisprudence specifically in this context. Rule 6 does not define the term "return." The government submits that a brief review of the plain English definition of these terms would be instructive to the court and illuminate the government's argument.

The American Heritage College dictionary defines "return," in the context of the law, as submitting to a judge or other person in authority. The American Heritage College Dictionary 1167 (3rd ed. 1997). It also defines "file" as entering a legal document on the public official record. The American Heritage College Dictionary 509 (3rd ed. 1997). It defines "enter" as placing formally on record or submitting. The American Heritage College Dictionary 458 (3rd ed. 1997).

While all of these terms are different, their definitions are consistent with each other in the context of legal proceedings. Based upon the plain language interpretation of the verbs "return" and "file," Congress intended the terms to be used interchangeably. Even if the court concludes that Congress' intent is unclear given that it used two different words in two separate sections of the United States Code, the terms are synonymous in this context based upon their definitions.

---

same day of the return or within twenty-four hours of the return, affixes the filing date based upon the date on the poll sheet on the indictment documents. According to Fed.R.Civ.P. 5(e) in federal civil practice, the indictment, a paper, would be considered filed because it was submitted to a judge who accepted and promptly submitted it, through his courtroom deputy, to the clerk's office where a filed stamp was affixed.

The documents in this case, Attachments 1, 2, and 3, strongly indicate that the indictment was **returned** on December 20, 2007. It should be undisputed that an official certified transcript from the Pro-typist recording system would reflect that the indictment was **filed** on the public official record when it was returned in open court on December 20, 2007.[11] Finally, it is clear that the indictment was **entered** when it was "formally placed on record" in open court by the grand jury foreperson. Therefore, the indictment in this case was **returned, filed, and entered** when the grand jury foreperson submitted the indictment documents to Magistrate Judge Facciola in open court on December 20, 2007. The plain language interpretation of "return" and "file,"as used in their respective statutory section and rule, strongly indicates that the indictment was filed within 30 days. As noted above, even the plain English definition of enter, which was interposed by the defendants, indicates that the indictment was filed.

Not only does the plain language interpretation of these terms indicate that they can be used interchangeably, but the federal jurisprudence, in this jurisdiction as well as others, does as well.

### B.   An Indictment Is Filed When It Is Returned In Open Court.

The government did not find a criminal case that directly addresses this particular issue or alternatively, what the term "filed" means in the context of 18 U.S.C. § 3161(b). However, the government did find several federal cases that use the terms interchangeably when discussing and analyzing whether certain filing periods under the STA have been violated, including the 30-day

---

[11]Due to the timing of the court's order, the government was not able to secure a transcript of the return. However, the court may certainly request the compact disc from the clerk's office and listen to it to determine if the indictment return was "entered on the public official record."

indictment rule. Because these courts use the terms interchangeably, the indictment in this case was filed pursuant to 18 U.S.C. § 3161(b) when it was returned in open court on December 20, 2007. The "filed in open court" stamp memorializes that event, and the electronic docket entry recorded on ECF on December 27, 2007 does as well.

In *United States v. Garrett*, 720 F.2d 705 (D.C. Cir. 1983), the United States District Court for the District of Columbia Circuit considered co-defendant McNamara's claim that the indictment violated the 30-day indictment rule even though there were excludable days from the filing period. In determining the validity of the co-defendant McNamara's claim, the court started its analysis by stating that "[t]he grand jury returned an indictment on April 14, 1982." Then, the court continued by quoting the 30-day indictment rule in 18 U.S.C. § 3161(b) which uses the term "filed." The court recounted that the district court denied the defendant's motion, ruling that the indictment was "timely" even if certain periods were excluded. The court concluded that certain periods were excludable, and the indictment was timely filed. *United States v. Garrett*, 720 F.2d 705, 707-711 (D.C. Cir. 1983).

In assessing the issue and ruling that the indictment was timely filed pursuant to the STA, the D.C. Circuit started its analysis by noting the indictment return date. Given that the analysis of whether the indictment had been timely filed under the STA was directly connected to the indictment return date, the return date is the date the indictment was filed. For purposes of calculating and determining compliance with the 30-day indictment rule, the return date is the event that triggers the counting of the days within the time period.

Other courts in determining whether STA filing periods were violated have used these terms interchangeably as well.

In *U.S. v. Leftenant,* 341 F.3d 338 (4th Cir. 2003), the U.S. Court of Appeals for the Fourth Circuit considered the district court's denial of the defendant's motion to dismiss the indictment because it was returned more than thirty days after his arrest. In analyzing whether 18 U.S.C. § 3161(b) was violated, the Fourth Circuit stated:

> The indictment, however, was returned on March 4, 2002, more than ninety days after Leftenant's arrest. Even so, the indictment was not necessarily returned outside the STA's thirty day arrest-to-indictment period: § 3161(b) does not require that an indictment, in order to be considered timely, be returned within thirty nonexcludable days. In this regard, the STA provides a list of periods that are to be excluded in calculating the time within which an... indictment must be secured.

*Id.* at 344.

This court did not specifically used the term "filed." Instead, it used the terms "returned" and "secured." Therefore, the government argues that the terms are synonymous and are used interchangeably. In the instant case, the indictment was filed within the 30 day arrest-to-indictment period. Therefore, the indictment was timely filed.

In *United States v. Antonio*, 705 F.2d 1483 (9th Cir. 1983), the U.S. Court of Appeals for the Ninth Circuit considered whether the District Court erred in denying the defendant's motion to dismiss because the government failed to return an indictment within 30 days of his arrest as required by 18 U.S.C. § 3161(b). In analyzing the issue, the Ninth Circuit stated the following:

> Congress enacted the Speedy Trial Act of 1974 to facilitate the disposition of criminal proceedings and to minimize delays between arrest and trial. The Act prescribes time periods within which various stages of prosecution are required to be completed according to specific schedules. Sanctions are imposed for failure to comply with those temporal limits. The time limits themselves were phased in over a 4 year period and became mandatory on July 1, 1980. An important part of the scheme is a requirement that the period between the date of arrest and the **return** of an indictment or filing of an information cannot exceed 30 days. 18 U.S.C. 3161(b).....

*Id*. at 1484.

The Ninth Circuit substituted the term "return" when the actual code section uses the term "filed." By virtue of this substitution, the government argues that the terms are interchangeable. Most notably, the Ninth Circuit uses the term "return," and not "filing" as it did when referencing an information. The court did so because that term is specifically used when referencing the action that occurs when a grand jury submits its documents to the magistrate court to obtain an indictment as required by Rule 6(f). Given that the Ninth Circuit, in discussing the 30-day requirement pursuant to 18 U.S.C. § 3161(b) used the term "return," it linked the term "filed" with the term "return," rendering them synonymous. Therefore, the terms "return" and "filed" are used interchangeably in interpreting and analyzing Rule 6(f) in the context of the 30-day indictment rule.

In *United States v. Mahan*, 492 F. Supp. 2d 822 (S.D. Ohio 2006), the United States District Court for the Southern District of Ohio considered defendant Mahan's motion to dismiss the indictment because it was returned more than 30 days after his arrest. After determining whether any excludable periods applied, the district court concluded "[s]ince December 15, 2004 was the thirtieth day thereafter, the Indictment was **returned** in timely fashion under § 3161(b)." *Id.* at 826. Similarly, in this case, the indictment was **returned** on the thirtieth day, December 20, 2007, after the defendant's arrest, November 20, 2007. Thus, the indictment was timely **filed** pursuant to 18 U.S.C. § 3161(b).

## IV.   Conclusion

The plain language interpretation of 18 U.S.C. § 3161(b) in conjunction with Rule 6(f) indicates that the indictment was timely filed. Moreover, the federal jurisprudence strongly

confirms that interpretation and supports the government's argument that the terms "return" and "filed" are used interchangeably. Therefore, the indictment return in this case constitutes a timely filing pursuant to 18 U.S.C. § 3161(b).

WHEREFORE, the United States respectfully requests that the Court deny the defendants' motion to dismiss the indictment, ruling that the indictment in this case was timely filed pursuant to 18 U.S.C. § 3161(b).

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____/s/_____
Angela S. George, Assistant United States Attorney
DC Bar No. 470-567
Federal Major Crimes Section
555 4th Street, N.W., Room 4444
Washington, D.C. 20530
202-514-7315
Angela.George@usdoj.gov


_____/s/_____
Rhonda J.Campell, Assistant United StatesAttorney
Federal Major Crimes Section
555 4th Street, N.W., Room 4239
Washington, D.C. 20530
202-514-9519
Rcampbell2@usdoj.gov

# Attachment 1

SCHEDULED MATTERS - Magistrate Judge John M. Facciola    DATE: 12/20/07

PAGE 1    COURTROOM NO. 6 , 2nd    FLOOR IN THE MAIN COURTHOUSE

Courtroom Deputy: Lynn D. Coln    Court Reporter: Pro Typist

| TIME / CASE NO. | CAPTION | ATTORNEYS | PURPOSE |
|---|---|---|---|
| 1:45 P.M. CR 07-344 (RMC) | UNITED STATES OF AMERICA VS. Orrie Adams (J) | Gilberto Guerrero, Greg Marshall, Michelle Peterson | Detention Hearing  12/17/07 B/f Ju Dye Collyer |
| 1:45 P.M. 07-664M 07-647M | UNITED STATES OF AMERICA VS. Kenneth Longerbeam (J)  PH Waived  HWOB  1:56:36 - 2:03:41 | John Cummings  2/6/08 9:30 S.H.  D. Harold Martin  12-20-07 - 2-6-08 | Preliminary Hearing Detention Hearing  S.H.  Speedy Trial Waived Deft |
| 1:45 P.M. 07-647M | UNITED STATES OF AMERICA VS. William Yates (J)  Probable Cause Fd. Released PSS PR  2:20:21 - 3:01:59 | Angela George  HWOB USA AMD AT Detention ven Oral M for release Charles Daum by PH granted  ~~Carlos Vanegas~~ | Preliminary Hearing Detention Hearing  Officer Alphonso Matos |
| 1:45 P.M. 07-557M | UNITED STATES OF AMERICA VS. Sidney Spain (J)  Concedes Det.  Cont. 3:08:00 - 3:15:06  2:06:03 - 2:11:27 | Angela George, Jean Sexton  1/3/08 1:30 HWOB  ~~Steven McCool~~ | ~~Preliminary Hearing~~ Detention Hearing S.H.  Cont. Speedy Trial 12-20-07 - 1-3-08 |
| 1:45 P.M. | UNITED STATES OF AMERICA VS. New Criminal Cases (Names will not be available)  2:03:41 - 3:06:03 | 07-2 M.J. Angela George | Matters to be held in Courtroom 6 Second Floor |

| SCHEDULED MATTERS - Magistrate Judge John M. Facciola | | DATE: 12/20/07 |
|---|---|---|
| PAGE 2   COURTROOM NO. 6, 2nd   FLOOR IN THE MAIN COURTHOUSE | | |
| Courtroom Deputy: Lynn D. Coln | | Court Reporter: Pro Typist |

| TIME / CASE NO. | CAPTION | ATTORNEYS | PURPOSE |
|---|---|---|---|
| 3:30 P.M. CA 07-1820 | Falwell VS. District of Columbia | | Settlement Conference  To be held in Chambers, room 2321, second floor |
| 07-668M  2:11:27 - 2:20:21 | UNITED STATES OF AMERICA  *Released on PR*  VS.  Kendel B. Covington | Angela George  Rita Bosworth  PTR Svcs. V. Wilson | IA  Removal  (+ Appt Counsel) |
| Control Hrg. 1/14/08 01:30 PM | UNITED STATES OF AMERICA  VS. | Oral MT for Release by Dft, gr. | Oral MT to Remand by USA  Den |
| | UNITED STATES OF AMERICA  VS. | | |
| | UNITED STATES OF AMERICA  VS. | | |

# Attachment 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Returned in Court on December 20, 2007

**FILED IN OPEN COURT**

DEC 2 0 2007

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

In accordance with law, I as Foreperson of the Grand Jury 07-2, sworn in on November 15, 2007, respectfully report to the Court that in the finding of the following indictment returned in open Court on this 20th day of December, 2007, the number of Grand Jurors concurring in that indictment is herewith shown as follows; and I further certify that the indictment returned herewith is a true bill and has been approved by the Grand Jury:

| Name of Case | Number of Grand Jurors Concurring | Criminal Charges |
|---|---|---|
| 1. United States<br>v.<br>Francisco Albert Marte<br>Manuel DeJesus Carpio<br>    a/k/a Santos Rodriguez Ismael<br>Cesar Isabel | 17/19 | 21 U.S.C. 841(a)(1)<br>and 841(b)(1)(B)(ii);<br>18 U.S.C. 2 |
| 2. United States<br>v.<br>Samuel Gomez Mendoza<br>    a/k/a Nicholas Martinez<br>Rosendo Emilio Sanchez<br>    a/k/a Rosendo Sanchez-Martinez<br>Guillermo Velazquez-Martinez | 17/19 | 21 U.S.C. 841(a)(1)<br>and 841(b)(1)(B)(ii);<br>18 U.S.C. 2 |
| 3. United States<br>v.<br>Levid Valles<br>Walter Valles | 18/19 | 21 U.S.C. 841(a)(1)<br>and 841(b)(1)(B)(ii);<br>18 U.S.C. 2 |
| 4. United States<br>v.<br>Francisco Martinez<br>    a/k/a Francisco Martinez Rodriguez | 18/19 | 21 U.S.C. 841(a)(1)<br>and 841(b)(1)(B)(ii) |

Respectfully submitted,

Foreperson of Grand Jury 07-2
in and for the District of Columbia

Attachment 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 15, 2007

FILED IN OPEN COURT

DEC 20 2007

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 07-352 |
| v. | : | MAGISTRATE NO. 07-0585M-01 |
| | : | MAGISTRATE NO. 07-0585M-02 |
| FRANCISCO ALBERT MARTE, | : | MAGISTRATE NO. 07-0585M-03 |
| MANUEL DEJESUS CARPIO, | : | |
| also known as Santos Rodriguez Ismael, | : | VIOLATIONS: 21 U.S.C. §841(a)(1) |
| CESAR ISABEL, | : | and §841(b)(1)(B)(ii) |
| Defendants. | : | (Unlawful Possession With Intent to Distribute |
| | : | 500 Grams or More of Cocaine); |
| | : | 18 U.S.C. §2 |
| | : | (Aiding and Abetting) |

BATES, J. JDB

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

On or about November 29, 2007, within the District of Columbia, **FRANCISCO ALBERT MARTE, MANUEL DEJESUS CARPIO, also known as Santos Rodriguez Ismael, and CESAR ISABEL**, did unlawfully, knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, and the amount of said mixture and substance was 500 grams or more.

(**Unlawful Possession With Intent to Distribute of 500 Grams or More of Cocaine and Aiding and Abetting,** in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii) and Title 18, United States Code, Section 2)

A TRUE BILL:

FOREPERSON.

Attorney of the United States in
and for the District of Columbia.