# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  :
                           :
          v.              :
                           :     **Criminal No. 07-352 (JDB)**
MANUEL CARPIO       :
CESAR ISABEL         :
FRANCISCO MARTE,   :
                           :
         Defendants.   :

## GOVERNMENT'S OMNIBUS RESPONSE
## TO DEFENDANTS' PRE-TRIAL MOTIONS

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, hereby files this omnibus response to defendants' pre-trial motions in this case.

In support of this opposition, the United States represents the following.

## I.     Factual Background

We summarize here the facts pertinent to the pre-trial motions filed by defendants Manuel

Carpio, Cesar Isabel, and Francisco Marte.

On or about November 20, 2007, a cooperating source (CS #1) met with defendant Cesar[1]

inside of a nightclub in Prince Georges County, Maryland, and CS#1 informed defendant Cesar that

he was interested in purchasing one kilo of cocaine.  CS #1 and defendant Cesar exchanged

telephone numbers, and the next day defendant Cesar telephoned CS #1, and told him that he had

a seller who had three kilos of cocaine for sale.  At that time, CS #1 agreed to purchase one kilo of

cocaine for $26,000. CS #1 and defendant Cesar also agreed to meet the next day at the Shopper's

---

[1]Prior to this drug transaction, in the recent past, Defendant Cesar was known to the
Metropolitan Police Department (MPD), Narcotics and Special Investigation Division (NSID)
task force because he was the subject of another drug investigation.

Food Warehouse Supermarket (Shopper's) in Prince George's County, Maryland. CS #1 contacted Metropolitan Police Department (MPD) Sergeant Dale Sutherland, and CS#1 at the direction of Sgt. Sutherland, to arranged the meeting with defendant Cesar and the other sellers in the District of Columbia, where MPD officers could conduct surveillance.[2]

The next day, in the late afternoon or early evening, CS #1 and defendant Cesar met in the Shopper's parking lot. At that time, CS #1 informed defendant Cesar that they would have to drive into the District of Columbia to get the money from another individual for the drug sale. At that point, defendant Cesar made a phone call, and moments later a Black Pontiac (Pontiac), occupied by defendants Marte and Carprio, and Hector Fonseca[3] arrived in the Shopper's parking lot. At that point, defendant Cesar entered CS #1's vehicle, and they drove into the District of Columbia, followed by the Pontiac. Both vehicles drove into a Kentucky Fried Chicken (KFC)/Taco Bell/Dakota Liquor store parking lot located at 5510 3rd Street, N.E., in the District of Columbia,[4] where cooperating source (CS #2) was waiting in his vehicle.[5] CS #1 pulled into a parking space, which was parallel to CS#2's parked vehicle. The Pontiac pulled into a parking space that was

---

[2]CS #1 also contacted a police officer in the Prince Georges County, Maryland Police Department to set up this meeting; however, that Department was unable to organize the meeting in a short period of time.

[3]Hector Fonseca, the leasee of the rented Pontiac, was initially arrested and charged with Possession with Intent to Distribute Cocaine, however, the charges were later dismissed by the United States Attorney's Office because of insufficiency of evidence to link him to the drug sale.

[4]The Taco Bell and KFC are located on one side of the parking lot, and Dakota Liquor is located on the other side of the parking lot. The establishments are separated by an adjoining parking lot, which is separated by a two foot grass patch. There are no obstructions, such as median strips or concrete blocks, to the view from one side of the lot to the other.

[5]CS #2's vehicle was a government owned undercover vehicle.

between CS #1 and CS #2's vehicles.  The MPD surveillance team officers[6] were parked in a vehicle no more than two feet from CS # 2's vehicle.  The surveillance team vehicle was an unmarked car parked behind CS #2's vehicle, no more than two feet from CS #2 vehicle and the transaction.

According to the surveillance team, defendants Marte and Carpio,  along with CS #1, got out of their vehicles and entered CS #2's vehicle.[7]  Defendant Marte demanded that CS #2 show him the money; however, CS #2 told defendant Marte that he would not show the defendants any money until he saw the cocaine.  Defendant Marte instructed defendant Carpio to go and get "the stuff." At that point defendant Carpio got out of CS #2's vehicle; he walked over to the Pontiac; he opened the front passenger's side door; he leaned into the vehicle; he removed a bright red tote bag from the front passenger's seat; he closed the vehicle door; he walked back to CS #2's vehicle with the red tote in his hand; he got back into the rear of CS #2's vehicle, and he then passed the red tote over the seat to defendant Marte.  Defendant Marte took the red tote bag, opened the bag, and handed the tote bag to CS #2, who looked inside of the bag, which contained two bricks of powder.  At that point, as a signal to the surveillance officers, CS #2 got out of the vehicle, and went to the trunk.[8]

Within seconds, the surveillance officers moved in on CS #2's vehicle and the Pontiac.  As

---

[6]The MPD Surveillance Team officers consisted of several MPD arrest team officers (at least 10 officers), however, the undercover vehicle in the immediate vicinity of the drug transaction was occupied by Detective King Watts, Detective Eric Alvarado, and Detective Derrick Wallace.

[7]The men occupied CS #2's vehicle in the following manner: CS #2 occupied the driver's seat; defendant Marte sat in the front passenger's seat; defendant Cesar occupied the rear driver's seat; defendant Carpio sat in the rear passenger's seat; and CS #1 sat in the rear middle seat in between defendants Cesar and Carpio.

[8]CS #2 was instructed, by the surveillance officers, to exit the vehicle for only two reasons: 1) he was in danger; or 2) he had seen the cocaine, which was the surveillance officers' notice to move in on the targets.

they approached the vehicles, all of the defendants, along with Mr. Fonseca attempted to flee.  Once all of the defendants, including Mr. Fonseca were apprehended in the liquor store parking lot, Detective Watts approached CS #2's vehicle, and he observed the same red tote that he observed defendant Carpio take from the Pontiac sitting in the passenger's seat of CS #2's vehicle, where defendant Marte was observed by officers and other witnesses sitting with the red tote bag.  Inside of that red tote was approximately 1023 grams (two and a half kilos) of powder cocaine, which was wrapped in plastic and aluminum foil.

After the defendants were apprehended, on the same parking lot, they were searched incident to arrest.  Defendant Marte had three grams of powder cocaine on his person, along with two (2) one dollar bills with cocaine residue on them.  Defendant Carpio had $200 in U.S. Currency on his person at the time of arrest.  Because the officers watched the drug transaction take place, and CS #1 and CS #2 participated in the drug transaction, no police initiated identification procedure was conducted.

## II.    Motion to Suppress Identification

Defendants Isabel now moves to suppress identification evidence.  Specifically, defendant Isabel suggests that the identification procedure used by law enforcement officers was impermissibly suggestive and unreliable (Defendant Isabel's Motion to Suppress Id. at 2-3).[9]  This

---

[9]In his Motion to Suppress Identification, defendant Isabel also makes an argument unrelated to identification, that because defendant Isabel: 1) was not involved in the actual hand to hand drug transaction; 2) did not have any illegal contraband on his person when the officers searched him; and 3) his transaction with CS #1 occurred without being audio or visually recorded, there is no probable cause for defendant Isabel's arrest (Isabel's Motion to Suppress Id. at 1-2).  We strongly disagree.

Whether the police have probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of a prudent police officer and in light of the police

4

motion is flawed, and should be denied.

Because no identification procedures were used in this case, such as a "show-up," photo-array, or line-up used by the police, there was no police suggestivity involved, and thus a hearing on this issue is not warranted. Watkins v. Sowders, 449 U.S. 341, 347 (1981) (The Supreme Court has ruled that a defendant is not entitled to an automatic pretrial hearing regarding the admissibility of all eyewitness identification testimony. The Court explained that the evaluation of identification "evidence under the instructions of the trial judge is the very task our system must assume juries can perform.")

Here, defendant Isabel, along with the other co-defendants, were arrested on the basis of observations made by a police officer at the time the crime was committed. United States v. Baccollo, 725 F.2d 170, 173 (2nd Cir. 1983)(no pretrial proceeding or voir dire required before a witness makes in-court identification where the identifying witness has "seen the defendant in person

---

officer's training and experience. Illinois v. Gates, 462 U.S. 213, 230-32 (1983). The following facts, taken together, supplied ample probable cause to arrest defendant Isabel: (1) defendant Isabel told CS #1 that he had a seller, who wanted to move a large amount of cocaine; (2) defendant Isabel called CS #1 to set up the drug sale; (3) defendant Isabel met CS #1 in the Shopper's parking lot, and introduced CS #1 and CS #2 to defendants Marte and Carpio (4) defendant Isabel voluntarily entered CS #2's vehicle; (5) defendant Isabel voluntarily remained in CS #2's vehicle during the entire drug transaction. See Beck v. Ohio, 379 U.S. 89, 91 (1964) (Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense."); United States v. Hicks, 752 F.2d 379, 384 (9th Cir.1985)("Conduct which appears innocent to a lay person may have entirely different significance to an experienced narcotics officer."). United States v. Halliman, 923 F.2d 873, 881 (D.C. Cir.1991)("a combination of factors may establish probable cause even if each factor standing alone is insufficient."). These facts were sufficient to provide probable cause to believe that defendant Isabel had aided and abetted an illegal drug transaction. Accordingly, defendant Isabel's arrest was proper, and his motion to suppress based upon a lack of probable cause to arrest should be denied.

5

and in action at approximately the time of the violations charged in the indictment."); see also United States v. Mills, 704 F.2d 1553, 1564 (11th Cir. 1983)(no in camera proceeding required where witness has "a substantial independent basis for identification.")

Equally without merit is defendant Isabels' claim that the in-court identifications by these witnesses should be suppressed.  Defendant Isabels' claim is particularly inapt in this case because all of the eyewitnesses were on the scene watching defendant Isabel while the drug transaction was taking place, the very same witnesses who will testify at trial.  This circumstance does not make the identification unduly suggestive or otherwise invalidate it, in fact it support reliability.  See Redmond v. United States, 829 A.2d 229, 233 (D.C. 2003) ("[t]rial courts enjoy broad discretion as to the in-court identification procedures they use"); Id. at 234 ("when there has been an unequivocal, unsuggested, and otherwise constitutionally acceptable identification, subsequent identifications - even 'refreshed' ones in open court... are not conducive to irreparable misidentification, in violation of due process")(quoting Scott v. United States, 619 A.2d 917, 930 (1993)).  The in-court identification of defendant Isabel by the witnesses is very reliable given the witnesses' opportunities to observe the defendant while he was still on the scene.

Thus, because the several eyewitnesses observed Isabel acting as the "agent" and CS #1 observed Isabel from the time that he introduced the sellers to the cooperating sources, and voluntarily remain inside of the vehicle where the drug sale transpired, there is no basis for suppression of any in-court identification.  Accordingly, defendant Isabel's motion should be denied.

III.    **Motion to Sever Defendant Marte**

Defendant Marte now moves to sever his case from the other defendants' trials.  Defendant Marte argues that, absent severance: (1) defendant Marte, who claims to have had minimal

participation in this drug transaction, would be severely prejudiced by joinder; (2) there is a real prospect of antagonistic defenses; and (3) the jury is likely to find the defendant guilty by association (Defendant Marte Motion to Sever Trial at 1-2). As set forth below, these claims are without merit, and the Court should not sever defendant Marte from the joint trial.

### A.    Legal Principles

Any analysis of defendant Marte's severance motion begins with Federal Rule of Criminal Procedure 8(b), which controls joinder of both the offense and the defendants. See United States v. Wilson, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994).

This Circuit construes Rule 8 broadly in favor of joinder. United States v. Richardson, 167 F.3d 621, 624 (D.C. Cir.1999) ("The joinder presumption is especially strong where . . . the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts.'") (quoting United States v. Ford, 870 F.2d 729, 731 (D.C. Cir. 1989)); United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990) ("[T]his court . . . has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal caseload in our trial courts"); United States v. Jackson, 562 F.2d 789, 796-97 (D.C. Cir. 1977); United States v. Hines, 455 F.2d 1317, 1334 (D.C. Cir. 1971). In short, "a substantial public interest supports joint trial." United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir. 1971).[10]

---

[10]As the Court of Appeals for this Circuit has stated:

> [Joinder] expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.

In conspiracy cases[11] especially, severance should be the rare exception rather than the rule. "Rarely, if ever, will it be improper for co-conspirators to be tried together." United States v. Jackson, 64 F.3d 1213, 1217 (8th Cir. 1995). Severance is not appropriate simply because all the conspirators did not participate in all phases of the conspiracy, or because one defendant's role in the conspiracy was smaller or less important than another's. Blumenthal v. United States, 332 U.S. 539, 556-57 (1947); United States v. Leach, 613 F.2d at 1299; United States v. Nersesian, 824 F.2d 1294, 1304 (2nd Cir. 1987); United States v. Perholtz, 657 F.Supp. 603 (D.D.C. 1986) (defendants need not be equally involved before they may be tried together); United States v. Ianniello, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985) (the fact that defendant plays minor role in RICO conspiracy does not entitle him to severance), aff'd, 808 F.2d 84 (2nd Cir. 1986); see also United States v. Diallo, 29 F.3d 23, 27-28 (1st Cir. 1994) (severance is not appropriate where multiple trials would require "repetitive use of most of the same evidence and facts.").

Nonetheless, where defendants are properly joined, a district court can grant severance under Federal Rule of Criminal Procedure 14, but "only if there is a serious risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). "The defendant seeking severance must demonstrate a 'specific and compelling prejudice that resulted in an unfair trial and such prejudice must be a type against which the trial court was unable to afford

---

United States v. Robinson, 432 F.2d 1348, 1351 (D.C. Cir. 1976). See also United States v. Bruner, 657 F.2d 1278, 1289-90 (D.C. Cir. 1981); United States v. Mack, 466 F.2d 333, 337 (D.C. Cir. 1972).

[11]Although the defendants are not formally charged with conspiracy, the same underlying principles apply because clearly the defendants acted in concert.

8

protection.'" United States v. Causey, 185 F.3d 407, 416 (5th Cir. 1999); see United States v. Lopez,

898 F.2d 1505, 1510 (11th Cir. 1990);  United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986)

(providing that the movant "must show more than 'merely that a separate trial would offer him a

better chance of acquittal'").  The movant has the " difficult burden of showing that the prejudice

to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized

by avoiding lengthy multiple trials."  United States v. Panza, 750 F.2d 1141, 1149 (2nd Cir. 1984).

Further, the Supreme Court has cautioned that "Rule 14 does not require severance even if

prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district

court's sound discretion." Zafiro, 506 U.S. at 538-39.  Hence the test for determining "compelling

prejudice" is the jury's ability to follow the trial court's instructions and separate evidence relating

to each defendant.  United States v. Cross, 928 F. 2d 1030, 1039 (11th Cir. 1989);  see also United

States v. Leavitt, 878 F.2d 1329, 1339 (11th Cir. 1989).  In other words, where adequate instructions

are available, a defendant cannot make out compelling prejudice.  United States v. West, 877 F.2d

281, 287 (4th Cir. 1989).  Generally therefore, limiting instructions will cure any potential prejudice

to a defendant by having a joint trial.  Zafiro, 506 U.S. at 539.  Finally, as always, the Court must

balance the risk of prejudice to the defendant against the strong interests of judicial economy. United

States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir. 1987).

## B.  Analysis

Notwithstanding the firmly established principles governing joint trials that militate against

severance, the Court should not sever the joint trials because defendant Marte has not established

the specific and compelling prejudice required for severance.  In severance cases, the movant

shoulders the " difficult burden of showing that the prejudice to him from joinder is sufficiently

severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."
Panza, 750 F.2d at 1149.   In the instant case, defendant Marte raises speculative and uncertain assertions regarding the possibility of antagonistic defenses, and the potential for jury confusion. The defendants' conclusory and highly-speculative assertions do not come close to tipping the balance in favor of severing any portion of this case.   Therefore, defendant Marte's Motion for Severance should be denied.

### 1.      Antogonistic Defense

Defendant Marte's claim of irreconcilable antagonistic defenses are speculative, and he has not articulated a conflict in defenses sufficient to warrant severance of defendants.   Moreover, to demonstrate prejudicial joinder of defendants, conflicting defenses must be so irreconcilable that the jury would infer guilt from this fact alone.   See Zafiro, 506 U.S. at 538 (stating that "courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses" and that such low rates "may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses"); United States v. Reed, 98 Fed. Appx. 4, 2004 WL 1146952 (D.C. Cir. 2004).   The mere possibility of irreconcilable defenses is not sufficient to require severance.

In the instant case, none of the defendants in this case has articulated any theory of defense that suggests the danger of irreconcilable defenses required to show in order to be entitled to severance.   See Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966). Because defendant Marte has not articulated any prejudice based on any defense theory, his motion in this instance, should be denied.

10

2.      **Guilt By Association Prejudice**

Defendant Marte claims that absent severance, (1) the jury will find a defendant guilty by association; and (2) there is a real prospect of jury confusion.  Specifically, defendant Marte asserts that the vast majority of evidence is against co-defendants Isabel and Carpio, and that the spillover effect of such evidence will prejudice defendant Marte (Defendant Marte's Motion to Sever at 2).  These assertions are vague, conclusory, and without merit, and do not amount to the prejudice required to sever the joint trials.  However, severance on the grounds of disparity of the evidence is required only when the evidence against the other defendants is "far more damaging," and the prejudicial spillover may deprive the defendant of a fair trial.  United States v. Tarantino, 846 F.2d 1384, 1405 (D.C. Cir. 1988).  For severance purposes, "[i]t makes no difference that the government's case against [one defendant] may perhaps have been stronger than against" the other.  United States v. Emmons, 24 F.3d 1210, 1218 (10th Cir. 1994) (emphasis added);  accord United States v. Wacker, 72 F.3d 1453, 1468 (10th Cir. 1995) ("Nor is it sufficient to show that one defendant is less culpable than the remaining codefendants.");  United States v. Locascio, 6 F.3d 924, 947 (2nd Cir. 1993).

Even when the evidence against one co-defendant is more damaging than that against another or when one defendant's role is smaller or less prominent than the role of his co-defendants, severance still is not mandated.  See Tarantino, 846 F.2d at 1399;  United States v. Neresian, 824 F.2d at 1303-04;  see also United States v. Simmons, 679 F.2d 1042, 1050-51 (3rd Cir. 1982) (neither a disparity of the evidence nor the introduction of evidence which is more damaging to one defendant than another entitles the seemingly less culpable defendant to severance).

Here, as provided in the detailed facts and the Indictment: defendant Isabel set up the drug

deal; defendant Carpio and Marte brought the drugs to the meeting location; defendant Marte demanded money for the drugs; defendant Marte instructed defendant Carpio to go get the drugs from the other vehicle; defendant Carpio retrieved the drugs from the other vehicle; defendant Marte took actual possession of the drugs in CS #2's vehicle, thus, each of these defendants was well connected to this drug transaction. See Gambrill, 449 F.2d at 1159( In order to justify severance of their trials and the resulting additional expenditure of resources and inconvenience to witnesses, our local courts require that defendants show manifest prejudice from being jointly tried, which occurs only where the evidence of a defendant's participation in a crime is *de minimis* when compared to the evidence against his codefendants.).

Furthermore, because it is usually impossible to assess prior to trial a claim of disparity of the evidence, severance is rarely granted on this basis before trial. See, e.g., United States v. Applewhite, 72 F.3d 140, 144 (D.C. Cir. 1995). Finally, while "Zafiro recognized that evidence admissible only against some co-defendants can create the risk of an unfair trial for the other co-defendants, ... the Court also stated that limiting instructions are ordinarily sufficient to cure potential prejudice." United States v. Hardwell, 80 F.3d 1471, 1486-1487 (10th Cir. 1996) (citing Zafiro, 506 U.S. at 539-541).

In the instant case, as detailed in the fact section above, and contrary to some of defendant Martes' assertions, a substantial portion of the evidence in this case will be related to his participation with his co-defendant's in the joint venture to sell cocaine. Thus, it is unlikely that defendant Marte will be prejudiced by any of the evidence presented by the United States or his co-defendants. Accordingly, defendant Marte's motion, in this instance, should be denied.

3.     **Jury Confusion**

Defendant Marte claims that he is entitled to severance because of the real prospect of jury confusion from the joint trial and evidence. However, the movant must "show specific and compelling prejudice that would mislead and confuse the jury in the absence of a separate trial." United States v. Walls, 293 F.3d 959, 966-67 (6th Cir. 2002). "Even where a defendant is able to show some potential for jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials." Id. Furthermore, although "[w]hen prejudice is high, a district court is more likely to determine that separate trials are necessary, but, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539; see United States v. Solis, 299 F.3d 420, 441 (5th Cir. 2002) (providing that prejudice arising from jury confusion was sufficiently mitigated by the district court's proper cautionary and limiting instructions, where it could not be said that "the 'jury could not be expected to compartmentalize the evidence as it relates to separate defendants'").

In the instant case, the efficiency of a joint trial outweighs any if such, potential for jury confusion. For these reasons, the Court should not sever the joint trials because defendant Marte has failed to demonstrate a specific and compelling prejudice necessary to overcome the benefits of a joint trial.

IV.     **Defendant Marte's Motion to Suppress Physical Evidence**

Whether probable cause exists depends on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). Probable cause may be supported by a police officer's observations. United States v. Cruz, 834 F.2d 47, 51 (2nd Cir.1987), or by information provided to an officer by a reliable informant. See, e.g., United States v. Pena, 961 F.2d 333 339-40 (2nd Cir.1992). Here, CS

#1 set up a drug buy, which took place as MPD officers watched, providing an ample basis for probable cause.

After making a valid arrest, police may conduct a warrantless search of the suspect's person and of the area within the suspect's immediate control. United States v. Robinson, 414 U.S. 218, 235 (1973); Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Salazar, 805 F.2d 1394, 1399 (9th Cir.1986) (search before formal arrest is nevertheless incident to arrest because probable cause existed before the search). Here, after defendant Marte was lawfully arrested, the cocaine and U.S. currency on defendant Marte were seized during a search incident to a valid arrest. Accordingly, defendant Marte's motion to suppress physical evidence should be denied.

## V.      **Motions Relative to Pre-Trial Discovery**

Defendants Carpio, Isabel and Marte have requested various information under Fed. R. Crim. P. 12(d) now Rule 12(b)(4)(B)) and 16. The government has supplied defense counsel with initial discovery materials under Rule 16, and believes, therefore that it has complied, and is complying with its obligations under the discovery rules. To the extent each defendant, in his motion, seeks information beyond that required by Rule 16, the government opposes his motion. To the extent that the defendant makes specific requests for Brady and Jencks materials in this motion, the government responds that it understands its Brady obligations, and will provide Jencks materials at an appropriate time, well in advance of the appearance of each witness.

A.    **The Government Should Not Be Required to Disclose the Identity of Confidential Informants at this Time**

The defendants now seek disclosure of information of any informants, including witnesses, who were involved in this case (Isabel's Motion for Timely Disclosure of Informants at 2). Specifically, defendants argue pursuant to Roviaro,[12] that "In order to properly defend this case, it is imperative that the accused be furnished with the names, addresses, and present locations of each and every informant (Marte's Motion at 1). Since Roviaro arose out of a situation in which the informant who participated in the charged offense was neither made available to the defendant nor testified at trial, defense counsels reliance on Roviaro in the instant case is misplaced.

The government enjoys a qualified, though "time-honored" privilege to withhold the identity of its informants from criminal defendants. Roviaro v. United States, 353 U.S. 53 (1957); United States v. Brodie, 871 F.2d 125, 128 (D.C. Cir. 1989). In making the determination whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the cooperating witness's identity against the defendant's right to prepare a defense. Roviaro, 353 U.S. at 62; United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1994). The defendant bears the heavy burden of proving that disclosure of the informant's identity is necessary and relevant to the defense. Id. at 654; United States v. Staufer, 38 F.3d 1103, 1109 (9th Cir. 1994). Courts do not order disclosure where, as here, such disclosure would place the informant in personal danger and the prospective testimony is not exculpatory. United States v. Pelton, 578 F.2d 701, 707-08 (8th Cir. 1978).

Here, the government has developed two cooperating sources, both of whom are co-

---

[12]Roviaro v. United States, 353 U.S. 53 (1957).

defendants in other cases.  We intend to call those cooperating sources as witnesses at trial. Disclosure of their identities at this time, therefore, is not required.  See, e.g., United States v. Foster, 815 F.2d 1200, 1202-03 (8th Cir. 1987) (denial of defendant's motion to disclose informant's identity proper where informant testified at trial and was subject to cross-examination). Furthermore, the government submits that, as mentioned above, there is nothing exculpatory about the prospective testimony of the cooperating witnesses, and defendants have not even alleged how such testimony may be materially exculpatory.  We recognize that there exists information regarding the cooperating witnesses, which is bias material, but defendants have made no showing to support its disclosure at this early date.

Wholly apart from the practical reality that defendants' motion amounts to a request for the identity of the government's witnesses, the Court should deny the instant motions for several reasons. First, the defendants' request is overbroad. See, e.g., United States v. Whitmore, 480 F.2d 1154, 1155 (D.C. Cir. 1973) (government may withhold informant's identity where informant furnished information which served as the basis for a search warrant).  Second, the courts will not order disclosure where such disclosure will place the informant in personal danger and the prospective testimony is not exculpatory.  See United States v. Pelton, 578 F.2d 701, 707-708 (8th Cir. 1978) (courts will not order disclosure where such disclosure will place the informant in personal danger and the prospective testimony is not exculpatory).  The United States represents that at the present time disclosure of the identity of any informant who participated in the charged incident poses a substantial risk to the safety of the informants and/or the family members, friends and associates of the informant.  Moreover, there is nothing exculpatory about the prospective testimony of any informant in the charged incident.  Disclosures of matters affecting the credibility of any informant's

16

anticipated testimony will be made at an appropriate time, sufficiently in advance so as to ensure that no delay in the trial will be necessary.

Third, the United States would call as witnesses the cooperating sources informants, who participated in the transactions or criminal conduct charged in the instant case. See United States v. Foster, 815 F.2d 1200, 1202-1203 (8th Cir. 1987) (denial of defendant's motion to disclose informant's identity proper where informant testified at trial and was subject to cross-examination). If the United States decides not to call any such cooperating sources who participated in the charged crime at the trial, the United States will notify the Court as soon as that decision is made. If under such circumstance any defendant wants to speak with any such informant, the United States would provide the name of the attorney who represents the informant. To the extent that an informant's presence is within the control of the United States, the government would make the informant available to testify at trial on behalf of the defendant. United States v. Pelton, supra, 578 F.2d at 707-708.

**B.      The Government Should Not Be Required to Disclose Jencks Material at this Time**

Defendants Carpio and Isabel move for the early disclosure of any Jencks evidence in the instant case. The defendants argue that "Absent timely pretrial disclosure, the defense will be denied the opportunity to effectively use such material in the preparation and presentation of its case" (Isabel's Motion for Timely Disclosure of Impeaching Evidence and Jencks Material at 4). Specifically, defendant Isabel requests that this Court order the government to produce all Jencks material fourteen days prior to the motion's hearing. The requests should be denied.

The defendants' request for Jencks material prior to trial is plainly at odds with the statute

17

itself, which does not obligate the United States to produce such materials until after the direct examination. See 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness which relates to the subject matter as to which the witness has testified."); United States v. Tarantino, 846 F.2d 1384, 1414 (D.C. Cir.) (*per curiam*) ("The Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case."). Defendant's request is also at odds with the Rules of Criminal Procedure. See Fed. R. Crim. P. 26.2(a) (disclosure not required until after the witness has testified on direct examination).

The fact that early disclosure of Jencks material may assist the defendants in preparing for a motion's hearing is no reason to disregard the statute. See generally Tarantino, 846 F.2d at 1414-1415 (defendant not entitled to early disclosure of Jencks Act statements even when the statements may have assisted in cross-examining other witnesses called by the government earlier in the trial). The Jencks Act and the Rules authorize the government's disclosure of Jencks material at the time of trial. See Tarantino, 846 F.2d at 1414 ("This congressional determination is not to be disregarded by the courts."); In re United States, 834 F.2d 283, 287 (2nd Cir. 1987) (Jencks Act controls statements by witnesses and district court has "no inherent power to modify or amend the provisions of that Act"). While the government recognizes the need to schedule its Jencks disclosures so as not to delay the trial, its legitimate concerns for witness security counsel against early disclosure in this case. Instead, we propose disclosing these materials, which are not voluminous, two weeks before trial, which would be sufficient time to afford the defendants an

18

opportunity to use the materials for cross examination without delaying the trial.

### C.   The Government Should Not Be Required to Disclose Brady/Giglio Material at this Time

Each defendant requests the immediate disclosure of impeaching, bias, or so-called Giglio[13] materials.  The government must produce exculpatory evidence – including impeachment evidence – to defendant in time for him to make use of it.  See, e.g., United States v. Paxson, 861 F.2d 730, 737 (D.C. Cir. 1988).  When the exculpatory evidence in question – like the evidence here – is solely of an impeaching nature, disclosure shortly before trial satisfies the government's obligations.  United States v. Tarantino, 846 F.2d 1384, 1416 (D.C. Cir. 1988).  In Tarantino, the appellant argued that, although he had the material to use for impeachment at trial, the government's failure to provide the material before trial constituted a Brady violation.  The Court of Appeals rejected appellant's argument:

> This argument strikes us as an attempt to convert Brady into a broad rule of discovery in criminal cases.  Appellants' argument necessarily suggests that all relevant material held by the government must be produced prior to trial, for relevant material will always be at least marginally useful at every stage of trial.  As a matter of policy such broad discovery might or might not be wise, but certainly it is not required by present law.

Id.  Accordingly, the government proposes disclosure of all impeaching , Brady/Giglio materials two weeks before trial, which would afford the defendants the opportunity to fully and appropriately use the materials. "The suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   Brady v. Maryland, supra, 373 U.S. 87.

---

[13] Giglio v. United States, 405 U.S. 150 (1972).

"Impeachment evidence may fall within the Brady rule.  Giglio v. United States, supra, 405 U.S. at 154 ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the Brady rule].") (internal quotation omitted).

However, Brady and its progeny do not create a "general right to pretrial discovery" and instead, simply require that disclosure be made "in time for use at trial."  United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988).  "Like the extent of the required disclosure, the timing of a disclosure required by Brady is also dependent upon the anticipated remedy for a violation of the obligation to disclose: the prosecutor must disclose "material" exculpatory impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001) (vacating district court order requiring production of all favorable information immediately on demand by defendant).  The impeachment information expressly sought by the defendants may be put to immediate use in cross-examination of the pertinent witness.  Since the defendants do not need to conduct any further investigations to prepare their defense based upon this information, disclosure of the requested information is not required until trial.  See United States v. Wilson, 160 F.3d 732, 742 (D.C. Cir. 1988), (government's failure to disclose witness' recanted statements more than one day before witness testified not result in Brady violation since statements did not support viable alternative defense and defense made effective use of statements at trial).

**VI.     Notice of 404(b) Evidence**

Counsel for defendants Isabel and Carpio request notice by the government of its intention to introduce any 404(b) evidence which was not previously disclosed.  In response, the government submits the following:

20

(1) On or about November 20, 2007, law enforcement seized three grams of cocaine from defendant Marte's person;

(2) On or about July 6, 2007, defendant Isabel, along with two other co-conspirators, Johnathan Garcia and Miguela Concepcion, attempted to sell one kilo of cocaine, to a MPD/NSID cooperating source. The seized substance was tested, and the results were inconclusive.

      WHEREFORE, the United States respectfully moves this Court to deny the defendants' pre-trial motions.

      Respectfully submitted,

      JEFFREY A. TAYLOR
      UNITED STATES ATTORNEY


      _____/s/_____
      RHONDA L. CAMPBELL
      ASSISTANT UNITED STATES ATTORNEY
      D.C. Bar # 462402
      555 4th Street, N.W., Room 4239
      Washington, DC 20530
      (202) 514-9519
      rhonda.campbell@usdoj.gov